## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE/OPELOUSAS DIVISION

| | | |
|---|---|---|
| NEW ENGLAND INSURANCE COMPANY | * * * | CIVIL ACTION NO. 06-555-RFD-CMH |
| VERSUS | * * | JUDGE: DOHERTY |
| RICHARD D. BARNETT | * * * | MAGISTRATE JUDGE: KAY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL AND/OR TO ALTER OR AMEND JUDGMENT OF JUNE 10, 2010 ON BEHALF OF RICHARD D. BARNETT</u>

LEE A. ARCHER, #16791
Law Office of Lee A. Archer
1225 Rustic Lane
Lake Charles, LA 70605
Telephone: (337)474-4712
Facsimile: (337) 474-4712

WARREN D. RUSH, #11545
P. O. Box 53713
Lafayette, LA  70505
Telephone:  (337) 235-2425
Facsimile:  (337) 235-4709

Attorneys for Counterclaimant, Richard D. Barnett, Individually and as Assignee of all of Ernest L. Parker's claims against New England Insurance Company

**TABLE OF CONTENTS**

TABLE OF CONTENTS                                                                    i

TABLE OF AUTHORITIES                                                              iii

INTRODUCTION                                                                         1

ARGUMENT                                                                             1

    I.  ERRORS OF FACT MERIT REHEARING AND REVERSAL
       OF THE JUDGMENT.                                                            1

    II.  ERRORS OF LAW MERIT REHEARING AND REVERSAL
        OF THE JUDGMENT DISMISSING BARNETT'S BAD FAITH
        CLAIMS.                                                                       7

        A.  UNDER THE *COMBUSTION* DECISION, PARKER'S LIA-
           BILITY REMAINS TO BE TRIED AND THERE IS STILL
           A POSSIBILITY OF AN "ADJUDICATED EXCESS JUDG-
           MENT," MERITING REHEARING.                                       8

        B.  THIS COURT FAILED TO CONSIDER THAT BARNETT
           HAS A CLAIM AGAINST NEW ENGLAND FOR BAD
           FAITH FAILURE TO <u>PAY</u> THE SETTLEMENT UNDER
           LSA-R.S. 22:1973(B), WHICH DOES NOT REQUIRE AN
           "ADJUDICATED EXCESS JUDGMENT," MERITING
           REHEARING.                                                              10

        C.  THE *SULTANA* DECISION DEMONSTRATES THAT THE
           LOUISIANA SUPREME COURT WOULD NOT ENGRAFT
           THE REQUIREMENT OF AN "ADJUDICATED EXCESS
           JUDGMENT" UPON THE BAD FAITH STATUTES, MERIT-
           ING REHEARING.                                                          13

    III.  ERRORS OF LAW MERIT REHEARING AND REVERSAL OF
         THE PARTIAL SUMMARY JUDGMENT DISMISSING BAR-
         NETT'S DIRECT ACTION.                                              16

CONCLUSION                                                                        22

CERTIFICATE OF SERVICE                                                     24

**EXHIBITS**

EXHIBIT A - DEPOSITION OF ERNEST PARKER

EXHIBIT B – DEPOSITION OF RAE NELL DOMINGUES

EXHIBIT C - *IN RE: ERNEST L. PARKER,* 99-DB-001 (LADB 08/16/2001)

EXHIBIT D - AFFIDAVIT OF CHARLES M. PISANO

EXHIBIT E - SEVENTH SUPPLEMENTAL AND AMENDING PETITION IN *MARSH ENGINEERING V PARKER*

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page**

*Allstate Ins. Co. v. Theriot,*
    376 So.2d 950 (La. 1979) ................................................................................. 19

*Am. Int'l Specialty Lines Ins. Co.,*
    352 F.3d ............................................................................................................ 13

*Arceneaux v. Amstar Corp.,*
    2006-1592 (La. App. 4 Cir. 10/31/07), 969 So.2d 755,
    *writs denied* 2007-2486 and 2008-0053 (La. 3/24/08),
    977 So.2d 952 ............................................................................................. 1, 2, 6

*Cacamo v. Liberty Mutual Ins. Co.,*
    99-3479 (La. 6/30/00), 764 So.2d 41 ............................................................. 17, 21

*Carver v. Liberty Mutual Insurance Company,*
    277 F.2d 105 (5th Cir. 1960) ............................................................................ 18

*Continental Cas. Co. v. McDowell and Colantoni, Ltd.,*
    282 Ill. App. 3d 236, 217 Ill. Dec. 874, 668 N.E.2d 59
    (1st Dist. 1996) .................................................................................................. 6

*Descant v. Administrators of Tulane Educational Fund,*
    93-3098 (La. 7/5/94), 639 So.2d 246 ....................................................... 17, 20, 21

*Dubuclet v. St. Paul Fire and Marine Ins. Co.,*
    1994-0708 (La. App. 4 Cir. 12/15/94), 647 So.2d 1344 .................................. 17, 19

*Dumas v. U.S. Fid. & Guar. Co.,*
    241 La. 1096, 134 So.2d 45 (1961) .................................................................. 21

*Esteve v. Allstate Ins. Co.,*
    351 So.2d 117 (La. 1977) ................................................................................. 18

*Esurance Ins. Co. v. Meade,*
    08-1975 (La. App. 1 Cir. 5/8/09), 2009 WL 1272386 ...................................... 12

*Fletcher v. Schindler Elevator Corp.,*
    1995 WL 83703 (E.D. La. 1995) ...................................................................... 19

*Gas Pipe Line Corp. v. Transp. Ins. Co.,*
    953 F.2d 985 (5th Cir. 1992) ............................................................................ 14

*Green v. Auto Club Group Ins. Co.*,
  2008-2868 (La. 10/28/09), 24 So.3d 182 .................................................. 17, 21

*Hood v. Cotter*,
  08-215 (La. 12/2/08), 5 So.3d 819 .......................................................... 17, 21

*In re Katrina Canal Breaches Litigation*,
  495 F.3d 191 (5th Cir. 2007) .................................................................. 13

*In Re: Combustion, Inc.*,
  960 F. Supp. 1051 (W.D. La. 1997)................................................... passim

*Jensen v. Snellings*,
  841 F.2d 600 (5th Cir. 1988) ..................................................................... 6

*King v. Dogan*,
  31 F.3d 344 (5th Cir. 1994) ....................................................................... 5

*King v. Illinois Nat. Ins. Co.*,
  2008-1491, p. 7-8 (La. 4/3/09), 9 So.3d 780............................................ 14

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
  328 F.3d 192 (5th Cir. 2003) .................................................................. 13

*Lehmann v. GE Global Ins. Holding Corp.*,
  524 F.3d 621 (5th Cir. 2008) ...................................................... 19, 20, 22

*Louviere v. Shell Oil Co.*,
  720 F.2d 1403 (5th Cir.1983) ................................................................ 19

*LSBA v Bosworth*,
  481 So.2d 567 (La. 1986) .......................................................................... 2

*Marsh Engineering, Inc. v. Parker*,
  2004-0509 (La. App. 3 Cir. 9/29/04), 883 So.2d 1119,
    *writ denied* 2004-2669 (La. 1/28/05), 893 So.2d 73 ......................... 16, 21

*Mathies v. Blanchard*,
  2006-0559 (La. App. 1 Cir. 2/21/07) 959 So.2d 986 ......................... 13, 15

*McDermott v. Crown Zellerbach Corp.*,
  418 F.2d 598 (5th Cir. 1969) .............................................................. 18, 19

*Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co.*,
  93-1611 (La. App. 3 Cir. 9/21/94), 643 So.2d 242 ................................. 12

v

*Miramon v. Woods,*
   25,850 (La. App. 2 Cir. 6/22/94), 639 So.2d 353 .................................................................. 5, 6

*Parich v. State Farm Mutual Auto. Ins. Co.,*
   919 F.2d 906 (5th Cir. 1990) ...................................................................... 14

*Perkins v. Entergy Corp.,*
   2009-0632 (La. App. 1 Cir. 6/10/10), 2010 WL 2332357 ...................................... 2, 6

*Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.,*
   179 F.3d 169 (5th Cir. 1999) ...................................................................... 13

*Ragas v. MGA Ins. Co.,*
   1997 WL 79357 (E.D. La. 1997) .................................................................. 7, 11, 14

*Rollins v. Richardson,*
   2002-0556 (La. 12/4/02), 833 So.2d 921 ...................................................... 9

*Stewart v. City of Houston Police Dept.,*
   Slip Copy, 2010 WL 1286925 (5th Cir. 2010) ........................................... 5

*Sultana Corp. v. Jewelers Mut. Ins. Co.,*
   2003-0360  (La. 12/03/03), 860 So.2d 1112 ...................................... passim

*Sumrall v. Bickham,*
   2003-1252 (La. App. 1 Cir. 9/8/04), 887 So.2d 73,
    *writ denied* 2004-2506 (La. 1/7/05), 891 So.2d 696 ......................................... 1, 6, 9

*Yaukey v. Teachers Ins. Co.,*
   2009 WL 1211033 (E.D. La. 2009) .............................................................. 12, 14

**Statutes and Rules**

LSA-Civ.Code art. 2097 ................................................................................ 19

LSA-Civ.Code art. 3462 ................................................................................ 19

LSA-Civ.Code art. 3463 ................................................................................ 17, 19

LSA-Civ.Code art. 3503 ................................................................................ 19

LSA-R.S. 22:333 .......................................................................................... 18

LSA-R.S. 22:655 .......................................................................................... 16, 19

LSA-R.S. 22:1220 ...................................................................................... passim

LSA-R.S. 22:1269 ................................................................................................................ passim

LSA-R.S. 22:1892 ................................................................................................................ passim

LSA-R.S. 22:1973 ................................................................................................................ passim

Fed. Rules Civ. Proc., Rule 59 ..................................................................................................... 1

**Treatises and Periodicals**

Dean A. Sutherland, *Insurance "Bad Faith" Law Revisited,*
57 La. B.J. 374, 379 (2010) .............................................................................................. 11, 12

MAY IT PLEASE THE COURT:

Defendant and plaintiff-in-counterclaim, Richard D. Barnett, through undersigned counsel, respectfully submits his Memorandum in Support of Motion for Rehearing, New Trial and/or to Alter or Amend Judgment of June 10, 2010, in accord with Rule 59 of the Federal Rules of Civil Procedure and the local Rules of this Honorable Court.

## INTRODUCTION

Richard D. Barnett, defendant and plaintiff-in-counterclaim, respectfully urges this Honorable Court to reconsider and reverse its Memorandum Ruling dated June 10, 2010 in which it granted New England Insurance Company's [76] Motion for Partial Dismissal of Bad Faith Claims and [77] Motion for Partial Summary Judgment as to Barnett's Direct Action Claim.   Barnett further requests, in the event the Court denies this Motion, that this Court include in the Order a statement under Rule 54(b) that there is no just reason for delay and certifying the Memorandum Ruling of June 10, 2010 as a final and immediately appealable judgment.

## ARGUMENT

## I. ERRORS OF FACT MERIT REHEARING AND REVERSAL OF THE JUDGMENT.

New England, by filing numerous piecemeal Motions, has distracted this Court from the larger picture in this nineteen-year-old case, which involves a settlement without the consent of a recalcitrant insurer, a practice authorized in many decisions by this Court and the Louisiana courts. See, *In Re: Combustion, Inc.*, 960 F. Supp. 1051 (W. D. La. 1997); *Sumrall v. Bickham*, 2003-1252 (La. App. 1 Cir. 9/8/04), 887 So.2d 73, *writ denied* 2004-2506 (La. 1/7/05), 891 So.2d 696; *Arceneaux v. Amstar Corp.,* 2006-1592 (La. App. 4 Cir. 10/31/07), 969 So.2d 755, 771, *writs denied* 2007-2486 and 2008-0053 (La. 3/24/08), 977 So.2d 952, 953, and, the June 10,

1

2010 decision *Perkins v. Entergy Corp.,* 2009-0632 (La. App. 1 Cir. 6/10/10), Slip Copy, 2010 WL 2332357 (affirming summary judgment finding coverage and approving settlement without consent of the insurers.)   According to the Louisiana jurisprudence: "A settlement agreement entered into by a policy holder or insured may be enforced against the liability insurer which did not consent to the settlement if the insured shows that the settlement is made in good faith, on a reasonable basis, in a reasonable amount and, in the event of a coverage denial, coverage is found to exist. To demonstrate [the reasonableness of the settlement,] the insured need not show that he would have lost the case, but only that a reasonably prudent person would have settled the case." *Arceneaux*, *supra*, quoting 14 *Couch on Insurance 3d* § 203.41 and 205.52; *Perkins v. Entergy Corp.,* 2010 WL 2332357, 12.

This case involves an unconscionable denial of justice.  It is beyond peradventure that New England's Insured, Ernest Parker, committed negligence and malpractice in this case. Ernest Parker **admitted** in his sworn deposition his negligence and malpractice in failing to fully advise his client, Richard Barnett, to obtain separate counsel before entering into the transfer of his interest in Campbell Wells.  See, Deposition of Ernest Parker, Exhibit A hereto; Accord, Deposition of Rae Nell Domingues, Exhibit B hereto.  Likewise, the Louisiana Disciplinary Board, responding to a complaint by another partner of Campbell Wells, found that Parker committed violations of DR 5-104(A) and DR 1-102(A)(1) by failing to advise his client "to seek advice from outside counsel concerning the stock transfer" or giving him "the type of 'advice which a . . . lawyer would be expected to give a client if the client consulted the lawyer regarding such a transaction to a third person.'  See, *In Re: Ernest L. Parker,* 99-DB-001 (LADB, 08/16/2001), Exhibit C hereto, citing *LSBA v Bosworth,* 481 So.2d 567 (La. 1986). The LADB

2

found that Parker "violated his duty owed to his client" and found "his misconduct to be negligent." *Id.*, at p. 8.

Parker purchased malpractice insurance coverage for the foregoing acts of negligence and malpractice which New England, in complete breach of its contract and Louisiana law, has failed to honor. New England has **no valid defenses to coverage**, never attempted to litigate its alleged coverage defenses, on which it bears the burden of proof, and yet for almost two decades has unconscionably refused to tender policy limits in this multi-million dollar case in which its insured, Ernest Parker, faced liability of over $36 million dollars, far in excess of the $4 million dollar coverage. As confirmed by the Affidavit of Ernest Parker's Counsel, the settlement without the consent of the insurer was made in good faith, on a reasonable basis, and in a reasonable amount, and must be enforced. Affidavit of Charles M. Pisano, Exhibit D hereto.

Statements made by this Honorable Court appear to indicate that this Court may believe that New England has a valid defense based on its "dishonest acts" policy exclusion. Memorandum Ruling at p. 2. Nothing is further from the truth. Before this exclusion may be applied, the policy requires a "final adjudication" that the insured has committed a dishonest or fraudulent act with "deliberate purpose and intent,"[1] which has never occurred. The Louisiana Disciplinary Board reviewed this matter and did not find that Ernest Parker committed a

---

[1] The Lawyer's Professional Insurance Policy, Section III, Exclusions, provides in pertinent part:

> This policy shall not indemnify the Insured for any damages or claim expenses as the result of any claim:
>
> A – that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent. Nothing contained in the foregoing shall exclude coverage to any other Insured who is not so adjudged to have committed any such act, error, omission or personal injury as described above.

dishonest or fraudulent act in connection with the stock transfers, or impose any sanctions, and there has been no other "final adjudication" with regard to the transaction with Mr. Barnett.[2]

Parker apparently believed that the transaction was a purchase of the stock in return for the removal of Davis and Barnett from the debt to Guaranty Bank and the sellers. See, *In Re: Ernest L. Parker,* 99-DB-001 (LADB, 08/16/2001), Exhibit C hereto, at p. 8. After lengthy consideration, Barnett came to believe that Parker in fact was negligent without intending to defraud him; and, accordingly, amended his Petition to remove the allegations of fraud and proceed on the basis of malpractice, negligence and breach of fiduciary duty, which New England's policy expressly covers. See, Seventh Supplemental and Amending Petition, Exhibit E hereto.

The Seventh Supplemental and Amended Petition, rather than the Fifth Supplemental and Amended Petition mentioned by this Court,[3] is the controlling Petition pending a ruling by the state court permitting filing of the Eighth Supplemental and Amended Petition. The First Supplemental, Amended and Superseding Counter-Claim, Exhibit B to Original Opposition to

---

[2]   The Louisiana Disciplinary Board found that Parker violated his duty as an attorney and was negligent, and committed violations of DR 5-104(A) and DR 1-102(A)(1) by failing to advise his client "to seek advice from outside counsel concerning the stock transfer" or giving him "the type of 'advice which a . . . lawyer would be expected to give a client if the client consulted the lawyer regarding such a transaction to a third person.' In this case, such counsel would include, at a minimum, specific advice and notice to Mr. Davis that the stock transfer was a final and complete transfer of his interest in Campbell Wells Corp. to the Respondent. Such advice would have clearly relayed to Mr. Davis that he could not reacquire the stock after his financial problems were resolved." See, *In Re: Ernest L. Parker,* 99-DB-001 (LADB 08/16/2001), Exhibit C hereto.

[3] In addition to its mention of the Fifth Supplemental and Amended Petition, this Court stated in its Memorandum Ruling that "in the underlying state court lawsuit, Barnett alleges that Parker employed a 'well-conceived plan to deprive Barnett of his interest' in a business known as Campbell Wells." Memorandum Ruling, p. 2. Nowhere in the controlling Seventh Supplemental and Amended Petition (or even the Fifth Supplemental and Amended Petition) is there any allegation of a "well-conceived plan to deprive Barnett of his interest" in Campbell Wells.

Motion to Dismiss, is the controlling pleading in this Court. Neither pleading asserts claims for fraud or accuses Ernest Parker of dishonest or fraudulent acts. Although New England and this Court reference earlier versions of the Petition, it is well established that **an amended complaint supersedes earlier complaints and renders them of no legal effect.** See, *Stewart v. City of Houston Police Dept.,* Slip Copy, 2010 WL 1286925, 2 (5th Cir. 2010), citing *King v. Dogan,* 31 F.3d 344, 346 (5th Cir.1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.")

Most importantly, even if certain of Ernest Parker's conduct could be deemed dishonest or fraudulent, which New England has never attempted to meet **its burden** to prove in any motion filed during the nineteen-year history of this case, the caselaw shows that Barnett may still recover for independent and preceding acts of malpractice and negligence by Parker and his secretary, Rae Nell Domingues, who admitted negligence in failing to advise Barnett to obtain separate counsel before executing the stock transfer. See, *Miramon v. Woods,* 25,850 , 13-14 (La. App. 2 Cir. 6/22/94), 639 So.2d 353, 360, an attorney malpractice and fraud case in which the court of appeal reversed the trial court's grant of a summary judgment in favor of **New England Insurance Company** on an identical dishonest acts exclusion, despite the fact that the attorney had been tried and convicted of **felony theft** for converting the assets of the succession, noting that in addition to the fraud claims, there were additional claims for negligence and breach of fiduciary duty as to which there had been no "final adjudication" of a dishonest or fraudulent act. *Id.* The *Miramon* court also held that the plaintiffs, who had been instrumental in obtaining

5

the defendant's theft conviction, were not "judicially estopped" or barred by res judicata from asserting negligence. *Id.*[4]

Likewise, as discussed in detail in Barnett's Opposition to New England's Motion for Partial Summary Judgment seeking to invalidate the Consent Judgment, New England's other policy defenses, which are based upon the settlement without its consent, are invalid under the jurisprudence permitting settlement without the consent of a recalcitrant insurer. See, *In re Combustion, supra; Sumrall, supra, Arceneaux, supra.* It is beyond peradventure that New England had **no valid defenses** to tendering policy limits for this claim for over fourteen years yet failed to do so. As such, settlement without the consent of the insurer was appropriate, as confirmed by this court in the *Combustion* case and by Louisiana courts in *Sumrall, Arceneaux,* and the June, 2010 decision in *Perkins, supra.*

This is exactly the type of unjust and unconscionable case, in which an insurer abuses its wealth and power by litigating against a claimant and an insured for decades without any valid defenses, that requires the intervention of the courts. Accordingly, Richard Barnett, individually and in his capacity as assignee of Ernest Parker, respectfully requests the assistance of this Court in ensuring that New England Insurance Company honors its contract of insurance and that justice is finally served.

---

[4] See also, *Jensen v. Snellings* 841 F.2d 600, 615 (5th Cir. 1988), in which the Fifth Circuit noted: "Although the Jensens allege fraudulent and dishonest acts by Snellings, on the face of the pleadings it is possible for them to recover under their complaint by proof of improper but nonfraudulent conduct on the part of Snellings and/or the Firm" and *Continental Cas. Co. v. McDowell and Colantoni, Ltd.,* 282 Ill. App. 3d 236, 217 Ill. Dec. 874, 668 N.E.2d 59 (1st Dist. 1996), *appeal denied,* 168 Ill.2d 585, 671 N.E.2d 728, 219 Ill. Dec. 561 (Ill. Oct 02, 1996), in which the court held that the misappropriation of funds by a law firm partner did not preclude coverage for negligent supervision of the trust funds under a dishonest acts exclusion where that conduct was alleged to precede the misappropriation.

## II. ERRORS OF LAW MERIT REHEARING AND REVERSAL OF THE JUDGMENT DISMISSING BARNETT'S BAD FAITH CLAIMS.

The sole grounds for this court's dismissal of Richard Barnett's claims for bad faith penalties against New England was its conclusion that an adjudicated excess judgment is required to support bad faith actions in Louisiana. This conclusion was based upon the unreported decision of the court in *Ragas v. MGA Ins. Co.,* 1997 WL 79357 (E.D. La. 1997), which, based upon the stipulation of the parties and common law decisions, held that an "adjudicated excess judgment" was a prerequisite for a suit for bad faith failure to settle.

In sum, as discussed in detail, *infra*, failure to consider this case in the context of the *Combustion* and *Arceneaux* lines of cases on settlement without the consent of the insurer has caused this Court to commit errors of law in dismissing Richard Barnett's claims for bad faith. The decision warrants rehearing and reversal for three reasons. First, assuming but not conceding that an adjudicated excess judgment is required, under the *Combustion* and *Sumrall* decisions, Ernest Parker's liability remains to be tried and there is still the possibility of an adjudicated excess judgment. Accordingly, dismissal of the bad faith claims was improper and premature.

Second, in considering only Barnett's claim against New England for its failure to settle, this Court failed to recognize that Barnett also has a bad faith claim for New England's failure to pay the claim and pay the settlement that was incorporated in the Consent Judgment, pursuant to LSA-R.S. 22:1973(B)(2) and (5) (formerly LA R.S. 22:1220) which subject an insurer to bad faith penalties for failure to pay a claim or settlement within thirty days. The Louisiana Supreme Court, in *Sultana Corp. v. Jewelers Mut. Ins. Co.,* 2003-0360 (La. 12/03/03), 860 So.2d 1112, 1114, specifically held that the **only** element of a cause of action for bad faith failure to pay a settlement within thirty days is knowingly failing to pay the settlement within thirty days. *Id.,* at

7

1119.  There is no requirement of damages or an excess judgment in order to obtain an award of penalties under LSA-R.S. 22:1973(C). *Id.*  For this reason as well, Barnett has stated a cause of action for bad faith and the decision should be reversed.

Third**,** review of *Sultana, supra,* demonstrates that the Louisiana Supreme Court interprets the bad faith statutes strictly according to their terms in accord with legislative intent to protect insureds and claimants, and would never approve the *Ragas* holding.   In accord with the plain terms of LSA-R.S. 22:1973 (formerly LSA-R.S. 22:1220) the only requirement to state a cause of action for recovery of penalties for bad faith under LSA-R.S. 22:1973(C) is a knowing violation of one of the five provisions of LSA-R.S. 22:1973(B).  Accordingly, this court erred in engrafting a requirement of an adjudicated excess judgment upon the clear terms of LSA-R.S. 22:1973 and 22:1892, which contain no such requirement.

For these and additional reasons set forth *infra*, Richard Barnett respectfully urges this Court to reconsider and reverse its decision dismissing Barnett's claims for bad faith under LSA-R.S. 22:1973 and 22:1892.

### A. UNDER THE *COMBUSTION* DECISION, PARKER'S LIABILITY REMAINS TO BE TRIED AND THERE IS STILL A POSSIBILITY OF AN EXCESS JUDGMENT, MERITING REHEARING

Richard Barnett respectfully submits that failure to consider this case in the context of the *Combustion* line of cases on settlement without the consent of the insurer has caused this Court to commit errors of law in dismissing Richard Barnett's claims for bad faith.  First, even assuming, but certainly not conceding that, as this Court held, an adjudicated excess judgment is a pre-requisite to recovery for bad faith failure to settle, under the *Combustion* decision, Ernest Parker's liability remains to be tried and there is still the possibility of an adjudicated excess judgment.

8

As the Court noted in the *Combustion* case, the accident victims, which could **proceed either as assignees of the insured or in a direct action against the insurer**, would still be required to litigate Avondale's liability:  "*liability* has yet to be determined and can only be determined by the trier of fact. Parties to a litigation do not determine each other's liability through their own settlement and compromise. By entering into the consent judgment with Avondale, the Plaintiffs simply have waived their right to pursue *Avondale* for more damages regardless of how serious Avondale's liability is determined to be at trial."  *In re Combustion,* 960 F. Supp. at 1055 (emphasis in original.)

Likewise, the court in *Sumrall, supra,* confirming the validity of a settlement with the insured that reserved the plaintiffs' rights against the insurer, stated: "The settlement, evidenced by the release agreement, **did not determine [the insured's] or any other person's legal liability**. By entering into the settlement agreement and releasing [the insured], Sumrall simply waived his right to pursue [the insured] for more damages regardless of how serious Sumrall's injuries are **eventually determined to be at trial**. Sumrall waived his claim against [insured], while specifically preserving his claim against the non-settling insurer." *Sumrall, supra,*  887 So.2d at 79 (emphasis added.)  *Sumrall* is consistent with longstanding jurisprudence issued by other Louisiana appellate courts as well as the Louisiana Supreme Court. *See, Rollins v. Richardson,* 2002-0556 (La.12/4/02), 833 So.2d 921; *Futch v. Fidelity & Casualty Company of New York,* 246 La. 688, 166 So.2d 274 (1964); *Finnie v. LeBlanc,* 2003-1013 (La. App 3 Cir. 3/10/04), 875 So.2d 71; *Gasquet v. Commercial Union Insurance Company,* 391 So.2d 466 (La. App. 4 Cir.1980).

In sum, because there will be a trial to determine Ernest Parker's liability, and there still remains the probability of an adjudicated excess judgment, this Court's dismissal of the bad faith

claim on the grounds that there was no adjudicated excess judgment was erroneous. Accordingly, Richard Barnett requests that this Court reconsider and reverse the ruling.

> **B. THIS COURT FAILED TO CONSIDER THAT BARNETT HAS A CLAIM AGAINST NEW ENGLAND FOR BAD FAITH FAILURE TO PAY THE SETTLEMENT UNDER LSA-R.S. 22:1973(B)(2), WHICH DOES NOT REQUIRE AN ADJUDICATED EXCESS JUDGMENT, MERITING REHEARING.**

In considering only Barnett's claim against New England for its failure **to** settle, this honorable Court failed to recognize that Barnett also has a bad faith claim for New England's failure **to pay** the settlement that was incorporated in the Consent Judgment. See, Judgment of February 6, 2006 and incorporated Settlement and Assignment, *Marsh Engineering, Inc., et. al v Parker,* No. 91-5553-B, Fifteenth Judicial District Court for the Parish of Lafayette, State of Louisiana.

As set forth in Barnett's original opposition to New England's Motion to Dismiss Bad Faith Claims, Barnett's Counterclaim supports a claim under LSA-R.S. 22:1973(B)(2) (formerly LA R.S. 22:1220), which provides in pertinent part:

> **§ 1973. Good faith duty; claims settlement practices; cause of action; penalties**
>
> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
>
> &ast;&ast;&ast;
>
> (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

10

*Ragas v. MGA Ins. Co.,* 1997 WL 79357, (E.D. La. 1997), cited as authority by this court, discussed liability for bad faith for failure **to** settle and did not discuss failure to pay a settlement within thirty days under LSA-R.S. 22:1973(B)(2).   Even assuming, without conceding, the validity of *Ragas*, which judicially modified a strictly construed Louisiana statute, this Court cannot employ *Ragas* to engraft a requirement of an adjudicated excess judgment upon all five categories under LSA-R.S. 22:1973(B), which include liability for bad faith for such diverse insurer activities as misrepresentation of facts, denying coverage based upon an altered application and misleading a claimant as to the applicable prescriptive period.   An adjudicated excess judgment has absolutely nothing to do with those grounds for liability.   There is no requirement of an adjudicated excess judgment under these circumstances, including failure to pay a claim or settlement within thirty days under LSA-R.S. 22:1973(B).

The Louisiana Supreme Court, in *Sultana Corp. v. Jewelers Mut. Ins. Co.,* 2003-0360 (La. 12/03/03),  860 So.2d 1112, 1114, specifically held that proof of actual damages is not a prerequisite to an award of penalties under former LSA-R.S. 22:1220 (now LSA-R.S. 22:1973) for an insurer's refusal to pay a settlement within thirty days.   Indeed, based upon the clear terms of the statute, as well as well-settled principles of statutory interpretation that do not allow the courts to engraft provisions upon the law, the court held that **the only element of a cause of action for bad faith failure to pay a settlement within thirty days is knowingly failing to pay the settlement within thirty days.** *Id.,* at 1119.

In a recent article in the Louisiana Bar Journal, Dean A. Sutherland, *Insurance "Bad Faith" Law, Revisited,* 57 La. B.J. 374, 379 (2010), the author noted, citing *Sultana*:

> La. R.S. 22:1973B(2) requires insurers to pay a settlement within 30 days after the agreement is reduced to writing. By its terms, La. R.S. 22:1973B(2) applies to *all* written settlement agreements (with first-party insureds and with third-party claimants).

11

Unlike La. R.S. 22:1892A(2), the La. R.S. 22:1973B(2) 30-day time period does not contain the "arbitrary, capricious or without probable cause" standard. **If the insurer's failure to pay the amount of any written settlement agreement within 30 days is "knowingly committed," La. R.S. 22:1973B(2) is violated and R.S. 22:1973C statutory penalties may be imposed.**

57 La. B.J. at 379 (emphasis added), citing *Sultana*, 860 So.2d at 1119 and *Esurance Ins. Co. v. Meade,* 08-1975 (La. App. 1 Cir. 5/8/09), 2009 WL 1272386.

Next, the Supreme Court in *Sultana* quoted with approval the following language by the court in *Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 93-1611 (La. App. 3 Cir. 9/21/94), 643 So.2d 242:

Section 1220(A) legislatively imposes a duty of good faith and fair dealing on insurers. Section 1220(B) enumerates certain acts, which if knowingly committed or performed by an insurer, constitute a breach of its duty of good faith and fair dealing.

Penalties are imposed to discourage certain types of conduct by an insurer. The language in Section 1220(C) does not expressly require that a claimant suffer damages before recovering penalties. Moreover, if this requirement was so, the statute's purpose more often would be thwarted. Claimants may decide not to file claims against insurers if the disputed amount or the damages are not substantial. As an end result, the misconduct which the legislature obviously intended to curb or deter would thrive. **Thus, we find if an insurer commits any one of the acts enumerated in Section 1220(B), penalties may be imposed without a showing of damages.**

*Midland,* 643 So.2d at 244 (emphasis added.)

As such, under *Sultana*, it is clear that there is no requirement of any showing of damages, much less an adjudicated excess judgment, prior to the imposition of penalties for failure to timely pay a settlement or, indeed, for violation of any of the five subsections of LSA-R.S. 22:1973(B), three of which apply in this case. This interpretation was recently confirmed by the Eastern District Court in *Yaukey v. Teachers Ins. Co.,* 2009 WL 1211033, 6 (E.D. La. 2009), which stated: LSA-R.S. 22:1973 "Section (B) requires **only** that the insured ... show that

12

failure of an insurer to timely pay the settlement be knowingly committed." *Id.*, (emphasis added) quoting *Sultana,* 867 So.2d at 1117-19 (La. 2003) (internal quotes omitted). "Section (C) does not require a claimant to prove damages before recovering penalties." *Id., quoting Sultana* at 1118. The court in *Esurance Ins. Co. v. Meade,* 08-1975 (La. App. 1 Cir. 5/8/09), 2009 WL 1272386 reached the same result. See also, Judge Guidry's dissent in *Mathies v. Blanchard,* 2006-0559 (La. App. 1 Cir. 2/21/07) 959 So.2d 986, 989.

Accordingly, it is abundantly clear that there is no requirement of an "adjudicated excess judgment" for bad faith claims under LSA-R.S. 22:1973 (formerly LSA-R.S. 22:1220) for an insurer's refusal to pay a settlement within thirty days, meriting rehearing and reversal of this Court's dismissal of Barnett's bad faith claims.

### C. THE *SULTANA* DECISION DEMONSTRATES THAT THE LOUISIANA SUPREME COURT WOULD NOT ENGRAFT THE REQUIREMENT OF AN ADJUDICATED EXCESS JUDGMENT UPON THE BAD FAITH STATUTES, MERITING REHEARING.

This honorable Court has the obligation to determine how the Louisiana Supreme Court would rule on issues governed by Louisiana law.  In the absence of a final decision by the Louisiana Supreme Court, the court "must make an *Erie* guess" and "determine how that court would resolve the issue if presented with the same case." *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 206 (5th Cir. 2007). "In making an *Erie* guess, [federal courts] **must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes.**" *Id.*, (emphasis added), *citing Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 197 (5th Cir. 2003); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.,* 179 F.3d 169 (5th Cir. 1999). "Jurisprudence, even when it rises to the level of *jurisprudence constante,* is a secondary law source in Louisiana." *Id.*, quoting *Prytania Park Hotel,* 179 F.3d at 169 (footnote omitted); *see also Am. Int'l Specialty Lines Ins. Co.,* 352 F.3d at

13

261 (quoting *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992).

Review of *Sultana Corp. v. Jewelers Mut. Ins. Co.,* 2003-0360 (La. 12/03/03), 860 So.2d 1112, 1114 demonstrates that the Supreme Court interprets the bad faith statutes strictly according to their terms in accord with legislative intent and the stated purpose of the statute to protect insureds and injured claimants.    In accord with the plain terms of LSA-R.S. 22:1973 (formerly LSA-R.S. 22:1220) the only requirement to state a cause of action for recovery of penalties for bad faith under LSA-R.S. 22:1973(C) is a knowing violation of one of the five provisions of LSA-R.S. 22:1973(B). Damages are not required. *Id.* Accord, *Yaukey v. Teachers Ins. Co.,* 2009 WL 1211033, 6 (E.D. La. 2009).

Defendant respectfully submits that the Louisiana Supreme Court would never approve the decision in *Ragas v. MGA Ins. Co.* 1997 WL 79357, 2 (E.D. La. 1997) that an "adjudicated excess judgment" is a prerequisite to bad faith actions in Louisiana.[5]   Therein, the Eastern District Court did not consider Louisiana law, rather the "parties agree[d] that an 'excess judgment' is a requirement of any bad faith action brought against an insurer." *Id.* (Emphasis added.)  The Court also cited Ohio and California cases. *Id.*, at n. 4. The Louisiana Supreme Court has never so held, and would not so hold, because that alleged requirement is nowhere

---

[5]   The *Ragas* decision has already been discredited on other grounds, because it relied upon *dictum* in *Parich v. State Farm Mutual Auto. Ins. Co.,* 919 F.2d 906, n.3 (5th Cir. 1990), which has been rejected by Louisiana state and federal courts, as discussed in *King v. Illinois Nat. Ins. Co.,* 2008-1491, p. 7-8 (La. 4/3/09), 9 So.3d 780, in which the Louisiana Supreme Court indicated that a voluntary assignment of an inchoate right to file suit is permissible.

Moreover, in the *Ragas* case, unlike the instant case, the insurer actually **paid the policy limits**. In this case, New England has not paid one dime under the policy. The settlement and consent judgment in this case was within policy limits. New England's bad faith has been its failure to adjust the claim, failure to pay the settlement and failure to pay any sums due under the policy over nineteen years of litigation, in violation of LSA-R.S. 22:1973 (A), (B)(2) and (B)(5) and 22:1892(A)(1).

14

expressed in the Louisiana bad faith statutes. Both LSA-R.S. 22:1973(B)(2) and (5) and 22:1892(A)(1) penalize an insurer's failure to timely adjust and pay a claim or settlement, and do not require an excess judgment at all, adjudicated or not.

LSA-R.S. 22:1973 (A) provides: "the insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." *Id*. (emphasis added.) Subsection (B)(2) prohibits "Failing to pay a settlement within thirty days after an agreement is reduced to writing." *Id*. (emphasis added.) Subsection (B)(5) prohibits "Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." *Id*. (emphasis added.) LSA R.S. 22:1892(A)(1) mandates that an insurer: "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." *Id*. (emphasis added.) The violation is knowing failure to pay a settlement or claim. None of these provisions require a prior adjudicated excess judgment. Regardless of decisions from other states following common law, the federal courts cannot write that requirement into a Louisiana statute.

As Judge Guidry explained in dissent in *Mathies v. Blanchard, supra*, 959 So.2d 986, 989: "Pursuant to *Sultana,* regardless of whether the insured sustains any actual damages, such as an excess judgment, due to the insurer's breach of its duties, the insurer may still recover penalties under La. R.S. 22:1220. *Sultana,* 03-0360 at 7-8, 860 So.2d at 1118. Thus, an excess judgment need not be rendered before an insured may assert a cross claim based on this statute against his insurer in the tort proceeding." *Id.*, 959 So.2d at 989.

In sum, the *Sultana* decision makes it abundantly clear that the Louisiana Supreme Court will not permit the courts to engraft extra-statutory provisions upon the Louisiana bad faith

15

statutes.   An excess judgment is not a prerequisite to a claim for bad faith under LSA-R.S. 22:1973 or LSA-R.S. 22:1892.   Barnett has stated a claim for bad faith penalties under the foregoing Louisiana statutes.   Accordingly, Richard Barnett respectfully urges this Court to grant rehearing and correct this error of law.

### III.    ERRORS OF LAW MERIT REHEARING AND REVERSAL OF THE PARTIAL SUMMARY JUDGMENT DISMISSING BARNETT'S DIRECT ACTION.

In its decision dismissing Richard Barnett's Direct Action, this court held that Richard Barnett's Direct Action was barred by res judicata by virtue of the state court's 2004 decision in *Marsh Engineering, Inc. v. Parker,*  2004-0509 (La. App. 3 Cir. 9/29/04), 883 So.2d 1119, *writ denied* 2004-2669 (La. 1/28/05), 893 So.2d 73.   As discussed *infra*, this Court's decision was based upon three errors that merit rehearing and reversal of the judgment.

First, regardless of the state court's 2004 decision relating to plaintiffs' Fifth Supplemental and Amended Petition, Richard Barnett still had the right to file a subsequent direct action against the insurer after the issuance of the consent judgment and settlement under the express terms of the Direct Action statute, which provides that **after a judgment has been rendered against the insured "an action may <u>thereafter</u> be maintained** within the terms and limits of the policy by the injured person, or his or her survivors, mentioned in Civil Code Art. 2315.1, or heirs against the insurer." Direct Action Statute, LSA-R.S. 22:1269(A) (formerly LSA-R.S. 22:655).

Pursuant to the Direct Action Statute, LSA-R.S. 22:1269(A), which permits filing a direct action after a judgment, the courts cannot enforce peremptive or prescriptive periods to benefit an insurer while its solidarily liable insured is still a party to a lawsuit.   The effect would be that even though an insured is held liable in a lawsuit, the injured victim could not obtain recovery

16

from the insured's insurer unless he had previously named the insurer in the lawsuit, a result that is specifically negated by the terms of the Direct Action statute permitting the victim to bring a direct action against the insurer **after** a judgment has been rendered against the insured. LSA-R.S. 22:1269.

As the Louisiana Supreme Court has explained in numerous cases, "The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Green v. Auto Club Group Ins. Co.,* 2008-2868 (La. 10/28/09), 24 So.3d 182, 184, citing *Hood v. Cotter,* 08-215 (La.12/2/08), 5 So.3d 819; *Cacamo v. Liberty Mutual Ins. Co.,* 99-3479 (La.6/30/00), 764 So.2d 41, 43; *Descant v. Administrators of Tulane Educational Fund,* 93-3098 (La.7/5/94), 639 So.2d 246. As long as the substantive cause of action against the insured remains intact, the injured party has a procedural right of action against the insurer, and this procedural right continues after the issuance of a judgment against the insured.

Accordingly, the second direct action claim in the instant suit filed after the consent judgment was entered, while the insured and insurer were still parties to the pending state court suit, is permissible under the express terms and intent of LSA-R.S. 22:1269 permitting suit against the insurer to be filed after a judgment against the insured. It matters not that the judgment was in state court and the direct action was filed in federal court. See, *Dubuclet v. St. Paul Fire and Marine Ins. Co.,* 1994-0708 (La. App. 4 Cir. 12/15/94), 647 So.2d 1344, holding that a prior suit in federal court against the insurer interrupted prescription for a subsequent state court suit filed after the prescriptive period under the direct action statute and LSA-C.C. Art. 3463, which states: "An interruption of prescription resulting from the filing of a suit in a

17

competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending." *Id.*

Next, New England has consented to be sued, and does not have the right to contest the filing of a direct action by an injured party against it, under LSA-R.S. 22:333, which provides conditions for the issuance of a certificate of authority for it to transact business in the state of Louisiana:

> E. The transacting of business in this state by a foreign or alien insurer pursuant to a certificate of authority issued under this Subpart shall constitute a **consent to being sued by the injured person or his or her heirs in a direct action** as provided in R.S. 22:1269, whether the policy of insurance sued upon was written or delivered in the state of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided that the accident or injury occurred within the state of Louisiana.

LSA-R.S. 22:333(E) (emphasis added.)

Under LSA-R.S. 22:333(E), as a condition of doing business in this state, New England has consented to being sued and is barred from seeking dismissal of Richard Barnett's Direct Action. As the Louisiana Supreme Court stated in *Esteve v. Allstate Ins. Co.* 351 So.2d 117, 120 (La. 1977): "the right of direct action against a liability insurer in a Louisiana court is expressly conferred by statute." *Id.* No statute in this state permits an insurer to escape a direct action on grounds of prescription or peremption when the claim against the insured is not barred by prescription or peremption.

Nor does the Fifth Circuit allow such a result, which is completely contrary to Louisiana law of solidary liability. See, e.g., *McDermott v. Crown Zellerbach Corp.* 418 F.2d 598, 602 (5th Cir. 1969), stating: "In Louisiana the insurer and the insured are joint and solidary obligors, and suit against one interrupts prescription against the other." *Id.*, citing, *inter alia Carver v. Liberty Mutual Insurance Company,* 277 F.2d 105 (5th Cir. 1960). The Court further

18

noted: "The Louisiana Direct Action Statute, LSA-R.S. 22:655 [now LSA-R.S. 22:1269], provides that the tortfeasor and his insurer shall be liable in solido. '* * * suit brought against one of the debtors in solido interrupts prescription with regard to all.' LSA-Civ.Code, Article 2097 [LSA-Civ.Code art. 3462]" 418 F.2d at 602, n. 3.

Moreover, "the interruption continues as long as the suit is pending. LSA-Civ.Code art. 3463." *Fletcher v. Schindler Elevator Corp.* 1995 WL 83703, 2 (E.D. La. 1995). In this case, the state court suit against the insured is still pending, thereby interrupting prescription against the insurer. See, e.g. *Dubuclet v. St. Paul Fire and Marine Ins.* Co., 1994-0708 (La. App. 4 Cir. 12/15/94), 647 So.2d 1344 (suit against malpractice insurer filed 13 years after timely action against insured was timely under the direct action statute.) Accord, *Lehmann v. GE Global Ins. Holding Corp.* 524 F.3d 621, 626 (5th Cir. 2008).

In *Lehmann, supra,* the Fifth Circuit stated:

> Prescription is interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue. La. Civ.Code art. 3462. Thus, Lehmann's first suit, which was so commenced, interrupted prescription on her action against the Parish. Further, it interrupted prescription on her action against GE too, because under the direct action statute, liability insurers and their insureds are classified as solidary obligors, and when prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors. La. Civ.Code art. 3503.

> Such interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue within the prescriptive period **continues as long as the suit is pending. La. Civ.Code art. 3463.** In other words, after being interrupted by the filing of such a suit, prescription is continuously interrupted while the suit is pending. *Id.* at cmt. (b); *see also Louviere v. Shell Oil Co.,* 720 F.2d 1403 (5th Cir.1983) (upon certification holding in accordance with the decision of the Louisiana Supreme Court interpreting Louisiana Civil Code articles pertaining to prescription); *id.* at 1407 (discussing *Allstate Ins. Co. v. Theriot,* 376 So.2d 950 (La.1979)). Accordingly, Lehmann's first suit interrupted prescription on her action against both the Parish and GE until the judgment in that case became final on August 4, 2003, when the delay expired for any party to apply to the Louisiana Supreme Court for certiorari.

19

*Lehmann, supra,* 524 F.3d at 626 (emphasis added.)

Unlike *Lehmann,* where the initial suit ended after the final judgment, in this case the state court lawsuit is still ongoing and neither the insured nor the insurer have been dismissed from the suit: at minimum, there remains a third party action between Ernest Parker, the insured and New England, the insurer, which Richard Barnett, the injured party, has the right to enforce by virtue of the assignment from the insured. Accordingly, prescription has been continuously interrupted, and Richard Barnett was permitted to file a direct action in this suit based upon the consent judgment and settlement under the express terms of the Direct Action statute, which provides that after a judgment has been rendered against the insured "**an action may thereafter be maintained . . . by the injured person . . . against the insurer.**" Direct Action Statute, LSA-R.S. 22:1269(A) (emphasis added.)

Finally, careful review of the state court's 2004 decision shows that the court did not dismiss New England in its capacity as Ernest Parker's insurer, but rather only in its capacity as the insurer of the law firm of Bean and Parker and the estate and heirs of Jimmy Bean. Any other interpretation would mean that an insurer may independently assert a defense of peremption when his insured has no peremption defense, in violation of the Direct Action statute and Louisiana law on solidary liability between an insured and his insurer.

The basis for the state court's decision was that the claims against the law firm of Bean and Parker and the estate and heirs of Jimmy Bean were perempted, and New England, as the solidarily liable insurer of those defendants, could assert those insureds' defenses. The court noted: "The direct action statute does not create an independent cause of action against the insurer. It merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured. *Descant v. Adm'rs of Tulane Educ. Fund,* 93-

3098 (La. 7/5/94), 639 So.2d 246.[6] **When the injured party's substantive cause of action against the original tort feasor is extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law**. *Dumas v. U.S. Fid. & Guar. Co.,* 241 La. 1096, 134 So.2d 45 (1961)." *Marsh Engineering,* 883 So.2d at 1127 (emphasis added.)

The state court stated that peremption destroyed the cause of action against the Bean defendants, and held that this defense could be invoked by their insurer, New England: "In the case before us, peremption as a basis for the exception of no cause of action asserted by Bean, the Law Firm, the Estate, and the heirs arises from the fact that the claims against them are based on legal malpractice. The statutory peremption is not a personal defense between them and Barnett. The peremption statute in the present case creates a defense of no cause of action which is available to New England as their insurer." *Marsh Engineering,* 883 So.2d at 1127 (Emphasis added.) Nowhere in the decision did the court dismiss New England in its capacity as Ernest Parker's insurer.[7] Nor would the rationale of the decision apply to New England in its capacity as Ernest Parker's insurer. As New England has admitted, the claims against its insured Ernest Parker are not perempted. New England, as a solidary obligor, cannot raise a peremption defense that is not available to its insured.

---

[6]  See also, *Green v. Auto Club Group Ins. Co.,* 2008-2868 (La. 10/28/09), 24 So.3d 182, 184, stating: "The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Id*, citing *Hood v. Cotter,* 08-215 (La.12/2/08), 5 So.3d 819; *Cacamo v. Liberty Mutual Ins. Co.,* 99-3479 (La.6/30/00), 764 So.2d 41, 43; *Descant v. Administrators of Tulane Educational Fund,* 93-3098 (La.7/5/94), 639 So.2d 246.

[7]  New England was and is still a defendant in the suit pursuant to Ernest Parker's 1993 Third Party Demand against New England seeking enforcement of the insurance policy and all other general and equitable rights against New England, claims to which Mr. Barnett succeeded by virtue of the 2006 settlement and assignment, Exhibit C to original Opposition to Motion to Dismiss Direct Action.

In the Fifth Circuit's decision in *Lehmann v GE Global Insurance Holding Corp.,* 524 F.3d 621, 623 (5th Cir. 2008), the Court held that an underlying one year prescriptive period that applied to the claim against the insured began to run on the plaintiff's right to sue an insurer who was not a party to the suit when the judgment in the underlying suit against the insured became final. In this case, however, the state court suit is still ongoing and New England was and still is a party to the state court suit, at minimum by reason of Ernest Parker's 1993 Third Party Demand against New England. Parker as well remains a party in the ongoing state court suit; he was not dismissed in the Consent Judgment. Therefore, according to the *Lehmann* decision, due to the solidary liability between the insurer and insured, prescription/peremption has not run on Barnett's Direct Action against New England.

Accordingly, for this reason as well, defendant and plaintiff-in-counterclaim, Richard Barnett, respectfully urges this honorable Court to grant rehearing and reverse its Memorandum Ruling of June 10, 2010 dismissing Richard Barnett's Direct Action.

## CONCLUSION AND PRAYER

For the foregoing reasons, defendant and plaintiff-in-counterclaim, Richard Barnett, respectfully urges this honorable Court to grant rehearing and/or new trial, reverse its Memorandum Ruling of June 10, 2010 and deny the Motion for Partial Dismissal of Bad Faith Claims Pursuant to Rule 12(B)(6) and Motion to Dismiss and/or for Partial Summary Judgment on Barnett's Direct Action filed by New England Insurance Company, at New England's costs. In the event that this Court denies the Motion, Barnett requests that this Court include in the Order a statement under Rule 54(b) that there is no just reason for delay and certifying the Memorandum Ruling of June 10, 2010 as a final and immediately appealable judgment.

Respectfully submitted,

LEE A. ARCHER, #16791
Law Office of Lee A. Archer
1225 Rustic Lane
Lake Charles, LA 70605
Telephone: (337)474-4712
Facsimile: (337) 474-4712

WARREN D. RUSH, #11545
P. O. Box 53713
Lafayette, LA 70505
Telephone: (337) 235-2425
Facsimile: (337) 235-4709

Attorneys for Counterclaimant, Richard D.
Barnett, Individually and as Assignee of all
of Ernest L. Parker's claims against New
England Insurance Company

23

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE/OPELOUSAS DIVISION**

| | | |
|---|---|---|
| NEW ENGLAND INSURANCE | * | CIVIL ACTION NO. 06-555-RFD-CMH |
| COMPANY | * | |
| | * | |
| VERSUS | * | JUDGE: DOHERTY |
| | * | |
| RICHARD D. BARNETT | * | MAGISTRATE JUDGE: KAY |
| | * | |
| | * | |

*****************************************************************************

**CERTIFICATE**

I hereby certify that on the 7th day of July, 2010, a copy of the Motion for New Trial and/or to Alter or Amend the Judgment of June 10, 2010 and Memorandum in Support was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to James Hautot and Tina Kappen by operation of the court's electronic filing system. I also certify that there are no non-CM/ECF participants in this matter.

Lafayette, Louisiana, this 7th day of July, 2010.

WARREN D. RUSH

24