UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NEW ENGLAND INSURANCE CO. | CIVIL ACTION NO. 06-555 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| RICHARD D. BARNETT | MAGISTRATE JUDGE KATHLEEN KAY |

## MEMORANDUM RULING

Before this Court is a Motion for Partial Summary Judgment as to Barnett's Enforcement of the Consent Judgment [Record Document 105] filed on behalf of New England Insurance Company ("New England"). New England seeks a determination that Richard D. Barnett ("Barnett") is not entitled to enforce the Consent Judgment against New England in any capacity as a matter of law. Specifically, New England contends Barnett's right to enforce the Consent Judgment as a purported judgment creditor is precluded on the following independent and separate grounds: (1) Barnett's direct action claims against New England are perempted; (2) Barnett's right to enforce the Consent Judgment is perempted; (3) the "no action" clause contained in New England's policy prohibits Barnett's enforcement of the Consent Judgment against New England; and (4) Barnett's recovery is limited to $100.00—the amount the insured became legally obligated to pay. Id. Similarly, New England contends Barnett's right to enforce the Consent Judgment as the alleged assignee of Ernest L. Parker ("Parker"), the insured, is precluded based on the "no action" and "consent to settle" clauses contained in the policy and, alternatively, that Barnett's recovery is limited to $100.00.

Id. However, in ruling on a separate motion for partial summary judgment [Record Document 77] filed by New England, this Court found that Barnett's direct action claims are barred under the doctrine of res judicata and dismissed with prejudice Barnett's direct action claims in their entirety.[1]  Consequently, the issue of whether Barnett is entitled to enforce the Consent Judgment as a purported judgment creditor, as raised by New England in the instant motion for partial summary judgment, is now moot; the Court need only determine whether Barnett is entitled to enforce the Consent Judgment against New England as Parker's alleged assignee.  For the reasons stated herein, New England's Motion for Partial Summary Judgment [Record Document 105] is **GRANTED**, and the claims asserted by Barnett in his capacity as Parker's assignee are **DISMISSED WITH PREJUDICE.**

## **FACTUAL BACKGROUND**[2]

New England issued a Professional Liability Policy, bearing policy number PH 000006385 ("the Policy"), to the Law firm of Bean and Parker, a law firm in which Parker was a member, with a policy period from February 5, 1986 through February 5, 1987.  [Record Document 105, Exhibit 5 ("the Policy")].  In 1991, Barnett filed an action in state court alleging that Parker employed a "well-conceived plan to deprive Barnett of his interest" in a business known as Campbell Wells, "committed civil fraud," and

---

[1] See Judge Doherty's June 10, 2010 Memorandum Ruling [Record Document 123].

[2] For additional discussion on the facts giving rise to this litigation, see Record Document 123.

engaged in a "device, scheme or artifice to defraud plaintiffs."[3]  [Record Document 105, Exhibit 1 ("State Court Petition")].  Having issued the Policy to Parker's law firm, New England agreed to defend Parker in the state court action, subject to a full reservation of rights to assert any defenses available to it under the Policy.  Nearly twelve years later, by way of his Fifth, Sixth and Seventh Supplemental, Amended and Restated Petitions, Barnett asserted a direct action claim against New England as the insurer of Parker.  New England responded by filing Peremptory Exceptions of No Cause of Action and Res Judicata in the state court action, seeking dismissal of Barnett's direct action claims against New England.  [Record Document 77, Exhibit D].  The state court granted New England's exceptions and dismissed Barnett's claims against New England with prejudice.  [Record Document 77, Exhibit F].

       Thereafter, Warren Rush, attorney for Barnett, advised New England of Barnett's intent to settle his claims with and obtain an assignment of rights from Parker.  [Record Document 105, Exhibit 2.B].  New England responded by letter to Parker, reconfirming that New England was continuing to handle his claim under a full reservation of rights and specifically directed Parker to the "Consent to Settle, Settlement, Defense" clause and to the "Conditions" pertaining to assignment of interest.  Id., Exhibit 2.A.  On October 14, 2005, New England extended a settlement offer to Barnett in exchange for a full release of Parker and New England.  [Record Document 105, Hautot Affidavit ¶ 14].  No counteroffer was made.  Id. at ¶ 15.

---

[3] See Marsh Eng'g, Inc. & Richard D. Barnett v. Ernest L. Parker, et al, 15th Judicial District Judicial Court for the Parish of Lafayette, Civil Docket No. 91-5553B.

On December 7, 2005, Barnett entered into a "Settlement and Assignment" with Parker in which Parker stipulated to the entry of Judgment against him for the sum of $4,024,665.21 plus legal interest in exchange for the sum of $100.00 and assignment of all of his "rights, titles, and interests in the proceeds of any and all primary, excess, and umbrella insurance policies that may provide coverage" for the claims asserted. [Record Document 105, Exhibit 3 ("Settlement and Assignment")]. The state court approved the settlement and entered a Consent Judgment against Parker in the amount of $4,024.655.21 plus legal interest, incorporating by reference all "terms and conditions" as set forth in the "Settlement and Assignment Between Ernest L. Parker and Richard D. Barnett" in extenso. Id., Exhibit 4 ("Consent Judgment").

On March 30, 2006, New England filed the instant lawsuit against Barnett seeking a declaration that it has no liability under the Consent Judgment or otherwise. [Record Document 1]. Barnett answered and asserted a Counterclaim against New England through which he seeks to enforce the Consent Judgment against New England in his individual capacity as a purported judgment creditor (i.e., via the Louisiana Direct Action Statute) and in his capacity as Parker's assignee. In the motion sub judice, New England seeks summary judgment declaring that Barnett cannot enforce the Consent Judgment against New England and dismissing with prejudice Barnett's counterclaims regarding enforcement of the Consent Judgment. [Record Document 105]. Because the Court has already determined that Barnett's direct action claims are barred under the doctrine of res judicata and those claims have been dismissed with prejudice, see

Record Document 123, the Court's only issue remaining is whether Barnett is entitled to enforce the Consent Judgment against New England as Parker's alleged assignee.

**Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."[4]  Wallace v. Texas Tech.

---

[4]Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried.  Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried."  All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  Local Rule 56.2.

Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

In Louisiana, "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal." La. C.C. art. 2642. When an assignment occurs, the assignee is subrogated to the rights of the assignor. Id. It is axiomatic that an assignee acquires no greater rights than his assignor, and that all defenses available against the assignor are likewise available against the assignee. TCC Contractors, Inc. v. Hosp. Serv. Dist. No 3, – So.2d –, 2010 WL 5011315, at *7 (La.App. 1 Cir. 2010); Alvis v. CIT Group/Equip. Fin., Inc., 918 So.2d 1177, 1184 (La.App. 3 Cir. 2005); Hose v. Younger Bros., Inc., 878 So.2d 548, 550 (La.App. 1 Cir. 2004); see also, 1 Saul Litvinoff, The Law of Obligations § 17.35 at 557, Louisiana Civil Law Treatise (2001) ("An assignment does not alter the nature of the obligation, as a consequence of which the obligor may raise against the assignee those defenses he might have raised against the original obligee-assignor."). Thus, New England is entitled to assert the same defenses against Barnett that it could assert against Parker.

**1.     "Consent-to-Settle" and "No Action" Clauses**

Initially, New England argues that Parker's unilateral settlement with Barnett violated the "consent-to-settle" and "no action" clauses and, therefore, precludes Barnett (as Parker's assignee) from enforcing the Consent Judgment.  The "consent-to-settle" clause contained in the Policy provides, in relevant part:[5]

---

[5]The "Insuring Clause" of the Policy provides, in pertinent part:

A - Professional Liability and Claims Made Clause: To pay on behalf of the Insured all claim expenses and all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages as a result of claims first made against the Insured during the Policy Period:

    1.    by reason of any act, error or omission in professional services rendered or which should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible; or

    2.    because of personal injury arising out of the coverage set forth in INSURING CLAUSE A-1, provided always that such act, error or omission or such personal injury happens:

        (a)    during the Policy Period; or

        (b)    prior to the Policy Period, provided that prior to the inception date of this policy or in respect to any Named Insured added to the coverage afforded under this policy subsequent to the inception date of this Policy, prior to such Named Insured's inclusion hereunder:

            (i)    the Insured did not give notice to any prior insurer of any such act, error, omission or personal injury;

            (ii)    the firm's management committee or governing body, howsoever designated, or any member thereof designated in the application, had no reasonable basis to believe that any Insured had breached a professional duty;

            (iii)    there is no prior policy or policies which provide insurance for such liability or claim.

> B - Consent to Settle, Settlement, Defense:
> . . .The Insured may effect settlement of any claim, the subject of the coverage afforded hereunder within the limits of liability of this policy, with the written consent of the Company, such consent not to be unreasonably withheld.  The Insured shall not, except at personal cost, make any payment, admit any liability, assume any obligation, incur any expenses or settle any such claim in the absence of such consent. . .

[Record Document 105, Exhibit 5].

The "no action" clause provides:

> D - Action Against the Company:   No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by the written agreement of the Insured, the claimant, and the Company.

Id.

Louisiana courts have generally refused to enforce "consent-to-settle" or "no action" clauses where an insurer wrongfully denies coverage or unjustifiably delays settlement, forcing the insured to settle on its own.  See Danrik Constr. Inc. v. Am. Cas. Co., 314 Fed.Appx. 720, 723 (5th Cir. 2009); Fed. Ins. Co. v. New Hampshire Ins. Co., 2010 WL 28568, at *5 (M.D.La. 2010); Emile M. Babst Co., Inc. v. Nichols Const. Corp.,

---

> If coverage is otherwise afforded under this policy and if the available limits or liability of such prior policy or policies are insufficient to pay any liability or claim, this policy will, subject to the terms, conditions and limitations of this insurance, be excess over any such prior coverage, but this shall not override provision...
>
> It is a condition precedent to coverage under this policy that all claims be reported in compliance with the section CLAIMS A - Notice of Claim.

[Record Document 105, Exhibit 5].

488 So.2d 699, 703 (La.App. 1 Cir. 1986); Thomas W. Hooley & Sons v. Zurich Gen. Accident & Liab. Ins. Co., 235 La. 289, 103 So.2d 449 (1958).  In Babst, the Louisiana First Circuit Court of Appeal refused to enforce a "no action clause" where the insured's claim "was clearly covered" under the terms of the policy and "time was of the essence." Babst, 488 So.2d at 703.  Similarly, in Hooley, the Louisiana Supreme Court held that an insurance company cannot escape liability when "liability to the third person is unquestioned" and the insured's settlement "reduce[s] the amount for which the insurer is ultimately liable." Hooley, 103 So.2d at 453.  Thus, in order for the Court to determine whether the "consent-to-settle" and "no action" clauses are enforceable in this case, the Court must consider whether New England: (1) denied coverage of Barnett's claims against Parker and if such claims were "clearly covered;" and (2) "unjustifiably delayed" settlement with Barnett under circumstances where "time was of the essence." See Fed. Ins. Co., 2010 WL 28568, at *5.

New England argues, however, that when the circumstances in Babst and Hooley are not present, courts routinely enforce "consent-to-settle" and "no action" clauses as written to prevent recovery of unilateral settlement amounts by insureds.  [Record Documents 105, 141].  Here, at the time of settlement, New England had been defending Parker against Barnett's claims for over fourteen years through counsel of Parker's choice.  [Hautot Affidavit and attachments thereto].  According to James Hautot, counsel of record for New England in the underlying state court actions, Parker did not express a desire to settle with Barnett until several years after litigation began.

Id. at ¶ 10.  In the late 1990s and early 2000s, New England repeatedly participated in settlement negotiations with Barnett, but no settlement was ever reached.[6]  Id.  On September 30, 2005, before Parker settled with Barnett, counsel for New England again met with counsel for Parker and counsel for Barnett for the purpose of discussing settlement.  Id. at ¶ 11.  Following that meeting, on October 14, 2005, New England extended a settlement offer to Barnett to settle all of Barnett's claims contingent upon a full release of Parker and New England.  Id. at ¶ 14.  No counteroffer was made before Barnett settled his claims with Parker in December 2005.  Id. at ¶ 15.  Moreover, prior to the settlement between Barnett and Parker, New England again advised Parker that it intended to enforce the provisions of the Policy, including the "consent-to-settle" clause.  [Record Document 105, Exhibits 2.A and 2.F].

The Court agrees with New England that there is no comparison between the Babst and Hooley scenarios and the instant matter.  First, New England contends this is not a case in which the insured's claims were "clearly covered" because it has asserted numerous good faith coverage defenses and intends to litigate those defenses if motion practice does not terminate this case.[7]  Second, New England argues "time is not of the essence" because Parker was not in any danger of losing Barnett as a client.  Compare

---

[6]The Court notes that Barnett was convicted of conspiracy to commit murder for hire and aiding and abetting in the attempted murder of Parker during this time period, and thus questions whether either Barnett or Parker engaged in legitimate settlement discussions.  See U.S. v. Barnett, 197 F.3d 138 (5th Cir. 1999).

[7]New England asserts, among other defenses, that the alleged conduct of Parker does not qualify as "professional services" within the meaning of the Policy, that the dishonest acts exclusion precludes coverage for Parker's actions; and that the alleged wrongful acts took place two days before the Policy incepted.  See Record Document 1.

Babst, 488 So.2d at 703-04 (where the insurer "had no valid defense" against the claims of its insured and the insured was subject to additional liability if it did not complete its work in a timely manner).  Furthermore, Parker's unilateral settlement—in the amount of $100.00—did nothing to minimize the loss or to otherwise reduce the amount for which New England could be held liable.  Compare, Fed. Ins. Co., 2010 WL 28568, at *2 (where the excess insurer sought reimbursement from the underlying insurer for the $990,000.00 paid in settlement of the insured's claim).  There is simply no evidence before the Court demonstrating that New England either wrongfully denied coverage or unjustifiably delayed settlement.  Rather, the facts indicate that New England repeatedly engaged in good faith settlement negotiations with Barnett and Parker despite its belief that Barnett's claims were not covered under the terms of the policy.

In response to New England's motion for summary judgment, Barnett argues the Consent Judgment and incorporated Settlement and Assignment are valid and enforceable under the rationale of In re Combustion, 960 F.Supp. 1051 (W.D.La. 1997). In the Combustion case, plaintiffs sued Avondale Industries, Inc. ("Avondale") and a host of other defendants in 1986 for damages allegedly arising out of their exposure to toxic substances at the Combustion site.  In June 1995, the court allowed plaintiffs to amend their complaint to assert a claim against Avondale's insurers pursuant to Louisiana's Direct Action Statute.[8]  One month later, in July 1995, the plaintiffs entered

---

[8]Louisiana Revised Statute 22:1269.

into a settlement with Avondale whereby Avondale stipulated to the entry of judgment against it in the amount of $24,000,000.00.  Id., 960 F.Supp. at 1052.  In addition, Avondale assigned to plaintiffs all "rights, titles and interests in the proceeds of any and all primary, excess and umbrella insurance policies that may provide coverage to Avondale for the tort claims asserted in the Combustion Litigation."  Id.  Thereafter, the Court allowed plaintiffs to pursue their claims against Avondale's insurers via direct action and, alternatively, as Avondale's assignee.

Barnett's reliance on the Combustion case is misplaced because, contrary to the facts of this case, Avondale's insurers refused to participate in settlement negotiations and refused to join the settlement agreement.  In re Combustion, 960 F.Supp. at 1054.  More importantly, despite Barnett's assertion that the Combustion case stands for the rule that an insurer's refusal to settle results in a waiver of the "consent-to-settle" or "no action" clauses, the Combustion decision relies on the insurers' lack of participation only to find that the settlement did not contemplate release of the insurers—nothing more.  The Court did not address, much less decide, whether the insurers' actions precluded them from enforcing the provisions of the policies at issue.  Id.  And while Barnett also argues that the "no action" clause must yield to the Louisiana Direct Action Statute, this argument is likewise without merit.  Unlike the plaintiffs in the Combustion case, Barnett claims against New England under the direct action statute are perempted.  See Record Document 123.

Accordingly, having found that New England neither wrongfully denied coverage nor unjustifiably delayed settlement, and recognizing that Barnett can only proceed against New England in his capacity as Parker's assignee, the Court holds that the "consent-to-settle" and "no action" clauses preclude Barnett's rights to enforce the Consent Judgment and incorporated Settlement and Assignment.

### 2.   $100.00—Amount Paid by Parker

In an abundance of caution, the Court also finds that, even if Barnett's rights to enforce the Consent Judgment were not precluded by the "consent-to-settle" and "no action" clauses, that Barnett's recovery would be limited to $100.00—the amount paid by Parker in settlement. Under the terms of the Settlement and Assignment, Parker can never be liable to Barnett in any amount over $100.00. As Parker's alleged assignee, Barnett is not entitled recover any more than Parker himself would be able to recover. [Record Document 105]. Consequently, Barnett's recovery as Parker's assignee is capped at $100.00. See In re Combustion, 960 F.Supp. at 1052 (recognizing that any recovery by plaintiffs as Avondale's assignees would be capped at the settlement amount of $24 million).

### CONCLUSION

For the reasons stated herein, New England's Motion for Partial Summary Judgment as to Barnett's Enforcement of the Consent Judgment [Record Document 105] shall be **GRANTED,** and Barnett's claims against New England as Parker's alleged assignee shall be **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** on this 16th day of March, 2011.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE